UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MELVIN E. BARHITE,

                Plaintiff,                Case No. 1:08-cv-1138

v.                                                Honorable Robert J. Jonker

PATRICIA CARUSO et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

  I.  Factual allegations

Plaintiff is currently incarcerated at Gus Harrison Correctional Facility (ARF). According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS), Plaintiff was convicted by a Kent County jury of two counts of Criminal Sexual Conduct (CSC) fourth-degree, MICH. COMP. LAWS § 750.520e, and two counts of CSC third-degree, MICH. COMP. LAWS § 750.520d and was sentenced on July 20, 2001. Plaintiff sues Director of the MDOC Patricia Caruso and Brian Evers. He also sues the following Lakeland Correctional Facility (LCF) employees: Warden Carol Howes, Resident Unit Officer (RUO) J. Wild, and Resident Unit Manager (RUM) R. Foster and the following ARF employees: Warden Thomas K. Bell, RUO (unknown) Terrill, RUO (unknown) Gallup, RUM C. Ingram.

  In his *pro se* complaint, Plaintiff alleges that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated. Plaintiff alleges that Defendants removed certain pictures of young women from his possession because he is a Mormon.[1] Specifically, Plaintiff asserts that his pictures of young girls were removed from his possession two weeks after the incident of the state removing children from the Fundamentalist Church or Jesus Christ of Latter Day Saints in Texas and the accusations that older men were having sexual relations and marriages to young girls. (Compl. at 4.) Plaintiff claims that the pictures were removed in light of the "Texas incident" and because Plaintiff is a Mormon.

---

[1] In his complaint, Plaintiff makes statements regarding medical treatment, other removed property, transfers between facilities and being placed in administrative segregation. However, on multiple occasions Plaintiff states that the only issue he intends to raise in this complaint is the issue of whether his pictures were removed because of his religious beliefs as a Mormon. (Compl. at 3-4, 8, 26.)

Plaintiff states that the photos in question either came with him from County Jail or were sent to him by mail while incarcerated. (*Id*. at 15.) Plaintiff does not state who exactly are in the photographs, but that they are of objects and people. The pictures include "young girls" ranging in age from "14 to 26" years-old. (*Id.* at 15.) The photographs also include "a picture of a young lady standing on a [b]ed." (*Id.* at 10.)

According to Plaintiff, there was a hearing on July 25, 2008 to determine whether the photographs were contraband. (*Id*. at 14.) Defendant Ingram's findings were that Plaintiff did not provide any information about whether the pictures were of his wife and children; that the pictures are "quite possibly" the victims of Plaintiff; and that Plaintiff refuses to provide any information regarding the identity of the girls in the pictures. (*Id*. at 16-17.) Plaintiff asserts that there is no MDOC rule that he is not allowed to have pictures of his victims. (*Id*. at 17.) Plaintiff further asserts that he is allowed to have the pictures under MICH. DEP'T. OF CORR., Policy Directives 05.03.118 and 04.07.112. (Compl. at 10, 21.) He also asserts that the removal of the pictures violated his First Amendment rights and RUILPA.

Plaintiff seeks compensatory and punitive damages and costs. (Compl. at 27; Attach. to Compl. #4.)

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements

to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment

Plaintiff alleges that his First Amendment rights were violated because pictures of young women were removed from his belongings. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent*

*v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, 1997 WL 428903, at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy

or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

First, Plaintiff makes no allegations that the removed pictures are religious within his own scheme of things. He does not allege that the removal of the pictures in any way infringed upon his sincerely held religious practice or belief. He therefore has not alleged how his First Amendment right to the free exercise of religion was impaired. Second, the prison officials have a clear legitimate penological interest in protecting victims and attempting to rehabilitate Plaintiff. According to Plaintiff's complaint, the hearing officer's report and the contraband removal record stated that the pictures removed were of young women in "provocative poses," wearing "swimsuits, bras, panties, and only in a towel" and were taken at motel pools and in motel rooms.[2] (Compl. at 12, 16-17.) Plaintiff refused to provide information regarding the identity of the girls in the photos. There is a valid, rational connection between removing such pictures from the possession of an inmate convicted of two counts of fourth-degree CSC and two-counts of third-degree CSC and the legitimate governmental interest of protecting victims and promoting rehabilitation of an inmate

---

[2] Plaintiff complains that the hearing officer "assumed" that the pictures included pictures of his victims. (Compl. at 16-17.) However, Plaintiff refuses to state who the people in the removed pictures are and whether or not they are, in fact, pictures of his victims.

convicted of CSC.[3]  Consequently, the first *Turner* factor is satisfied.  The other three *Turner* factors also support the removal of the pictures.  Most importantly, Plaintiff has not even alleged that the pictures are necessary for or part of the practice of his religion.  Accordingly, Plaintiff fails to state a claim for a violation of his First Amendment rights.

        **B.**        **RLUIPA**

Plaintiff also alleges that his rights under RLUIPA were violated because pictures of young women were removed from his belongings. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).  The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7).  While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held."  *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted).  However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion.  *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held").

---

[3] To the extent Plaintiff asserts that the removal is not legitimately related to his rehabilitation because he has not undergone any rehabilitation, that argument fails. (Compl. at 17.) The prison officials have a legitimate penological interest in trying to rehabilitate Plaintiff, even if he does not choose to actively participate in his rehabilitation. (*Id.* at 12, 16-17.)

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

As previously discussed, Plaintiff makes no allegations that the removal of the picturers constitute a substantial burden to practice of his religious beliefs or that the removed pictures are even part of the practice of his faith. Therefore, he has failed to state a claim under RLUIPA.

### C. Property Claim

To the extent that Plaintiff asserts that his property was improperly removed, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). In his complaint, Plaintiff states that he received a hearing about whether the pictures were properly removed from his possession. (Compl. at 14-15, 16-17.) Therefore, Plaintiff fails to state a claim that his due process rights were violated even if he disagrees with the determination made by the hearing officer.

### D. MDOC Policy

Plaintiff alleges that he was permitted to have the photos in question under MICH. DEP'T. OF CORR., Policy Directives 05.03.118 and 04.07.112. (Compl. at 10, 21.) Plaintiff also asserts that the photos have been examined on other occasions and not removed. (*Id.* at 11.) Plaintiff claims that the photographs are "Legal Property" because they were used as exhibits in his

criminal trial and that he therefore has the right to possess them under Policy Directive 04.07.112.[4] (*Id.* at 21, 23.) In response to the hearing officer's determination that it appears that some of the pictures may be of Plaintiff's victims, Plaintiff states that "THERE IS NOTHING WITHIN THE MDOC RULES THAT STATES ANYTHING ABOUT VICTIMS PICTURES." (*Id.* at 17.)

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No.

---

[4]To the extent that Plaintiff asserts that the removal of the pictures somehow violated his First Amendment right to access the courts, his allegations are insufficient to state a claim. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff has made no allegation that the pictures at issue are necessary to his pursuit or a nonfrivolous legal claim. Therefore, he fails to state a claim that he was barred access to the courts.

97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   February 23, 2009            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE